**2017 BNH 003**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:                                                                                            Bk. No. 16-10671-JMD
                                                                                                        Chapter 13
David J. Wood and
Christina L. Wood,
          Debtors


*Peter V. Doyle, Esq.*
*Shaines & McEachern, P.A.*
*Portsmouth, New Hampshire*
*Attorney for Debtors*

*Dana A. Cetlin, Esq.*
*Cunningham, Machanic, Cetlin, Johnson, Harney & Tenney, LLP*
*Natick, Massachusetts*
*Attorney for CitiMortgage, Inc.*


**MEMORANDUM OPINION**

**I.  INTRODUCTION**

Debtors David and Christina Wood (the "Debtors") filed a chapter 13 bankruptcy petition on May 4, 2016.  Thereafter, they filed a Motion to Determine Secured Status and Void Wholly Unsecured Lien of CitiMortgage, Inc. (Doc. No. 35) (the "Motion").  In the Motion, the Debtors seek a determination pursuant to 11 U.S.C. §§ 506(a) and 1322(b)(2) that the claim filed by CitiMortgage, Inc. ("CitiMortgage" or the "Creditor") is unsecured and that its mortgage lien can be avoided in accordance with the provisions of the Mann decision by the First Circuit Bankruptcy Appellate Panel.  See Domestic Bank v. Mann (In re Mann), 249 B.R. 831 (B.A.P. 1st Cir. 2000) (holding that, notwithstanding the anti-modification provision contained in 11 U.S.C. § 1322(b)(2), debtors may void residential real property liens that are wholly unsecured

as determined by a valuation under 11 U.S.C. § 506(a)).  CitiMortgage opposed the Motion on the grounds that the value of the Debtors' residence is more than the amount owed on the Debtors' first mortgage and therefore its claim is not wholly unsecured.  The Court held an evidentiary hearing on January 19, 2017, in order to resolve the parties' dispute regarding valuation.  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

The Debtors own and reside at property located at 24 Tide Mill Road in Hampton, New Hampshire (the "Property").  The Property consists of a single-family, gambrel style home, located on .93 acres.[1]  The home was built in 1976 and has seven rooms, including three or four bedrooms[2] and two bathrooms, consisting of 1,648 square feet.[3]  It has an attached two-car garage and a four-foot crawl space under the home (i.e., it has no basement).  The home lacks any amenities like a fireplace, wood stove, patio, deck, or pool.  The interior of the Property needs to be updated throughout.  The Property is in overall "average to fair condition" with some deferred maintenance issues, including side and rear siding needing to be repaired or replaced as

---

[1] A good portion of the Debtors' backyard consists of wetlands.

[2] One of the bedrooms is currently functioning as an office.

[3] Both appraisal reports recite that the home has 1,648 square feet of gross living area.  At the hearing, the Creditor's Expert testified that he miscalculated the square footage of the second floor space and that the total gross living area is 1,716 square feet.  The discrepancy arises from the methodology used to calculate square footage of gambrel style homes, i.e., the roof pitch affects how much space is actually livable on the second floor.

well as window trim and fascia showing signs of rot.  The crawl space is damp, causing insulation to become loose and raising mold concerns.

The Property is located in a well-established area of Hampton comprised of primarily average sized single family homes that were built in the mid to mid-late 1900s.  The Property is similar in overall style and design to other homes in the neighborhood.  At the end of Tide Mill Road is a light industrial complex as well as the town's former landfill and current transfer station.  This creates some additional traffic in what is otherwise a residential area.  The Property is located a little over a mile from Hampton Beach and is in close proximity to highways and services.

The Property secures a first mortgage held by Bayview Loan Servicing, LLC ("Bayview").  Bayview filed a proof of claim on August 11, 2016 (POC 4-1) asserting it was owed a total of $335,320.37 on the petition date.  Bayview asserted in its proof of clam that the Property is worth $269,900.00.  The Property also secures a second mortgage held by CitiMortgage.  CitiMortgage filed a proof of claim on August 20, 2016 (POC 5-1). CitiMortgage asserts it was owed a total of $77,122.65 on the petition date.  CitiMortgage did not set forth a value for the Property in its proof of claim.

The Debtors filed the Motion seeking to void CitiMortgage's lien, indicating the Property was worth $269,900.00 based on a real estate broker's price opinion.  CitiMortgage filed an objection to the Motion, indicating the Property was worth $345,000.00 based on its real estate broker's price opinion.  Because the parties could not agree on a value for the Property, the Court set an evidentiary hearing.

At the hearing, both parties presented appraisal evidence.  The Debtors retained the services of Ken Sakurai ("Sakurai" or the "Debtors' Expert") of Appraisal Connection in

Hampton. In his expert opinion, the Property was worth $275,000.00 as of November 30, 2016. The Creditor retained the services of Jack Lavoie ("Lavoie" or the "Creditor's Expert") of Accurate Appraisal Services in Bedford. In his expert opinion, the Property was worth $340,000.00 as of November 17, 2016.[4] For real estate tax purposes, the Town of Hampton's assessed value of the Property is $281,900.00.

### III. DISCUSSION

The Debtors seek a finding that CitiMortgage's claim is wholly unsecured so that they may void its lien pursuant to the Mann decision. CitiMortgage seeks a finding that the Property is worth more than $335,320.37. If the Property is worth more than this amount, then some value exists to support CitiMortgage's claim, making it a claim that is "in fact both secured and secured only by security interest in the Debtors' principal residence, thereby implicating the anti-modification provision of § 1322(b)(2)."[5] In re Fournier, 2014 BNH 010, 3. The Debtors have the burden to prove that they are entitled to void CitiMortgage's lien. Id.; In re Robinson, 2015 BNH 007, 7.

The Debtors and the Creditor presented appraisal evidence through the testimony and reports of licensed appraisers. Both Sakurai and Lavoie used the same method for valuing the

---

[4] Lavoie's appraisal report indicated the value of the property was $338,000.00. At the hearing, he indicated that the square footage of the Property was actually 1,716 not 1,648 as reported. With the additional sixty-eight square feet of living space, at $40.00/sq. ft., Lavoie testified that the value of the Property should be increased by an additional $2,000.00 to $2,700.00. Lavoie indicated that the corrected value for the Property was $340,000.00.

[5] Section 1322(b)(2) of the Bankruptcy Code provides, in relevant part, that debtors, through a plan, may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The Debtors' plan has not yet been confirmed but it does provide for the voiding of CitiMortgage's lien. Doc. No. 28 at ¶ 7.

property, i.e., the sales comparison approach.[6] Both appraisers testified competently and had equivalent qualifications. Sakurai and Lavoie both have significant experience in appraising residential real estate as well as knowledge of the market and the Property, both having conducted a physical examination of it.[7]

The parties are $65,000.00 apart in their valuations, the Debtors' Expert valuing the Property at $275,000.00 and the Creditor's Expert valuing it at $340,000.00. The "magic number" for purposes of the Motion is $335,320.37, the amount owed on the first mortgage, a number which is much closer to the Creditor's valuation. If the Court were to find the Property is worth that amount, the Court would have to find that the margin of error in the Creditor's Expert's appraisal is less than 1.4%.[8] Essentially the Court would have to find no issues with the Creditor's appraisal evidence and it would have to completely discount the Debtors' appraisal evidence. See Robinson, 2015 BNH 007, 8-9; Fournier, 2014 BNH 010, 4. With that in mind, the Court will review the appraisal evidence.

### A. Debtors' Evidence of Value

The Debtors' Expert testified that the value of the Property was $275,000.00 based on a comparable sales analysis. Sakurai used three comparable sales to arrive at this value.

Comparable Sale 1 was located at 90 Landing Road, .45 miles from the Property. It is a ranch style home located on a .47 acre lot on a dead-end street. The home has 1,360 square feet

---

[6] "Valuation through the comparable sales approach assumes that the properties valued by the market are comparable enough to the subject property that the adjustments by the appraiser are relatively small and that the value is primarily determined by the market, not the appraiser." In re Ferman, 2001 BNH 028, 3.

[7] Sakurai testifed that, in addition to his recent appraisal of the Property, he also performed an appraisal of the Property approximately fifteen years ago.

[8] The Court notes that "valuation" is "less than an exact science." Fraize v. Beneficial Mortg. Corp. of NH (In re Fraize), 208 B.R. 311, 313 (Bankr. D.N.H. 1997).

and consists of six rooms, including three bedrooms and one bathroom. Like the Property, Comparable Sale 1 has no basement; unlike the Property, it has a fireplace, wood stove, and deck. Comparable Sale 1 sold for $285,000.00.

Comparable Sale 2 was located at 35 Mace Road, 1.2 miles from the Property. It is a cape style home located on .53 acres on a "cut-through" street like the Property. The home has 1,559 square feet and consists of seven rooms, including three bedrooms and one bathroom. Unlike the Property, it had no garage, it did have a basement, and it had a deck/porch. Comparable Sale 2 sold for $292,500.00.

Comparable Sale 3 was located at 21 Leavitt Road, .77 miles from the Property. It is a cape style home located on .37 acres on a dead-end street. The home has 1,365 square feet and consists of six rooms, including three bedrooms and two bathrooms. Unlike the Property, it had no garage. It did have a basement, a wood stove, and a deck/porch. Comparable Sale 3 sold for $292,000.00.

Since none of the comparable properties identified by Sakurai were identical to the Property, Sakurai made various upward and downward adjustments to the sale prices of the comparable sales to account for their differences. He arrived at the following adjusted sales prices, which compare to the actual sales prices as follows:

|  | Adjusted Sales Price | Sales Price |
|---|---|---|
| Comparable Sale 1 | $273,700.00 | $285,000.00 |
| Comparable Sale 2 | $279,200.00 | $292,500.00 |
| Comparable Sale 3 | $273,100.00 | $292,000.00 |

Sakurai made downward adjustments based on the location, view, condition, amenities, and basements of the comparable sales and made various upward adjustments based on room count, gross living area, and the lack of two car garages. The Creditor's Expert did not challenge these individual adjustments. The Court therefore has no basis upon which to question them. Sakurai

6

made no adjustments for the difference in age between the Property and the comparable sales. The Property is forty years old while the comparable sales range in age from fifty-four to sixty-eight years old.

### B. Creditor's Evidence of Value

Lavoie testified that the value of the Property was $340,000.00, also based on a comparable sales analysis. Lavoie used four comparable sales to arrive at this value.

Comparable Sale 1 was located at 13 Wentworth Avenue, .58 miles from the Property. It is a colonial style home located on a .35 acre lot. The home has 1,666 square feet and consists of seven rooms, including four bedrooms and one and one-half bathrooms. Unlike the Property, Comparable Sale 1 has a full basement and a deck. Like the Property, it has an attached two-car garage. Comparable Sale 1 sold for $399,000.00.

Comparable Sale 2 was located on 18 Bradstreet Road, .8 miles from the Property. It is a cape style home located on a .38 acre lot. The home has 1,478 square feet and consists of six rooms, including four bedrooms and two bathrooms. Unlike the Property, Comparable Sale 2 has a full basement, a patio, and only a one-car garage. Comparable Sale 2 sold for $363,200.00.

Comparable Sale 3 was located at 4 Noel Street, 1.22 miles from the Property. It is a gambrel style home located on .46 acres. The home has 1,758 square feet and consists of seven rooms, with four bedrooms and two bathrooms. Unlike the Property, Comparable Sale 3 has a full basement, a deck/enclosed porch, and no garage. Comparable Sale 3 sold for $350,000.00.

Comparable Sale 4 was located at 45 Tide Mill Road, right down the street from the Property. It is a tri-level style home located on .98 acres. The home has 1,714 square feet and consists of seven rooms, including four bedrooms and two and one-half bathrooms. Unlike the

Property it has a full basement, which is partially finished, and a deck.  Comparable Sale 4 sold for $353,500.00.

Like Sakurai, Lavoie made various upward and downward adjustments to the sale prices of his comparable sales to account for their differences.  He arrived at the following adjusted sales prices, which compare to the actual sales prices as follows:

|                   | Adjusted Sales Price | Sales Price  |
|-------------------|----------------------|--------------|
| Comparable Sale 1 | $350,280.00          | $399,000.00  |
| Comparable Sale 2 | $346,000.00          | $363,200.00  |
| Comparable Sale 3 | $322,200.00          | $350,000.00  |
| Comparable Sale 4 | $332,689.00          | $353,500.00  |

Lavoie averaged these adjusted sales prices to obtain a value of $338,000.00, which, as noted previously, he further increased to $340,000.00 at the hearing.

The Creditor's Expert made no adjustments for the difference in age between the Property and any comparable sale.  The Property is forty years old while the comparable sales range in age from thirty-two to fifty-two years old.

### C.  Court's Analysis of Value

The Court does not need to determine the actual value of the Property.  Rather, the Court only needs to decide whether the Debtors have demonstrated that it is more likely than not that the value of the Property is less than $335,320.37.  Thus, the Debtors need to persuade the Court that the value of the Property is closer to the value of their expert's appraisal than to the much higher value of CitiMortgage's appraisal.

In the Court's view, both experts testified competently and credibly, neither one seriously challenging the assumptions or analysis of the other.  The appraisers both complemented the other and agreed that each used the appropriate methodology in completing their appraisals.  The Court finds that both experts provided a logical rationale for the choice of their comparable sales.

In general, they did a good job of identifying the differences between the Property and their individual comparable sales and then making adjustments for them.

Sakurai testified that Lavoie did a thorough job and that there was nothing wrong with Lavoie's appraisal per se.  Sakurai simply contended that two of Lavoie's comparable sales (Comparable Sales 1 and 3) were in superior neighborhoods that historically have had higher sales values than other neighborhoods in Hampton.  He testified that Sakurai's and Lavoie's appraisal values would have been closer together if Lavoie had made location adjustments for those two sales (which he did not).

Sakurai also contended that Lavoie's Comparable Sale 2 was "too high" and that that particular property sold for a price that was beyond the rest of the sales prices for that neighborhood; he described that sale as an "outlier" and, as an outlier, Sakurai suggested that Comparable Sale 2 should not be considered as part of the valuation evidence.

Lavoie, on the other hand, seemed to indicate that Sakurai's appraisal was satisfactory.  He explained that the variance between their appraisal values was the result of "just two different people's opinion of value."  Lavoie testified that an appraiser's choice of comparable sales is the most important aspect of an appraisal as it will drive the value of the subject property.  If an appraiser has chosen the "wrong" comparable sales, i.e., properties that are not actually comparable, then the adjustments an appraiser makes to the comparable sales do not really matter.  Lavoie further explained that a property is comparable if a potential purchaser would consider purchasing the so-called comparable property.

The Court is persuaded by Lavoie's position that properties need to be comparable and that to be considered comparable, a potential buyer must be willing to consider buying the allegedly comparable property.  The Court finds that Lavoie's comparable sales are less

comparable to the Property than at least one sale that Sakurai selected as comparable (Debtors' Comparable Sale 1) for one reason: Debtors' Comparable Sale 1 is the <u>only</u> sale considered by either appraiser that lacks a basement like the Property. In the Court's view, this makes that sale the most comparable to the Property. Lavoie admitted in his testimony that buyers like basements and that there is utility in having a basement. All of the Creditor's comparable sales had full basements while the Property only has a crawl space.

It seems completely logical to the Court that the properties of the Debtors' size are more desirable to buyers if they have a basement than if they do not. The Property does not have a basement and is thus less desirable. In that one regard, Debtors' Comparable Sale 1 is most similar to the Property. The market selling price for that home was $285,000.00 and its adjusted value was $273,700.00.

The Court notes further that the market/selling price for CitiMortgage's comparable sales versus the Debtors' comparable sales was $366,000.00 versus $290,000.00. In other words, the Creditor's market selling price was 26% more than the Debtors' market selling price. This suggests to the Court that homes with basements may have a higher starting value and those homes occupy a different segment of the market than homes without basements.

Because the Property does not have a basement and all of the Creditor's comparable sales do have a basement, the Court does not believe that the value of the Property is in the upper range as the Creditor's Expert believes but rather closer to the Debtors' Expert's lower values and, specifically, to Debtors' Comparable Sale 1. On that basis, the Court does not find that Property was worth at least $335,320.37 on the petition date but rather some lesser amount.

Additional factors also support the Court's conclusion that the value of the Property is closer to the value of Debtors' Expert than to the Creditor's Expert. First, the Court notes that

the Creditor's Expert made higher adjustments to his comparable sales, as a percentage, than the Debtors' Expert did, thus moving further away from market value. Second, the Creditor's comparable sales were all in better condition and, on average, newer than the Property. Third, the higher values of the Creditor's Expert's comparable sales may also be attributable to CitiMortgage's comparable sales being in better neighborhoods as the Debtors' Expert contended at the hearing.

## IV.  CONCLUSION

For the reasons outlined above, the Court concludes that the Property was worth less than $335,320.37 on the petition date. Therefore, value does not exist to support CitiMortgage's claim, and CitiMortgage's claim may be treated as unsecured in accordance with 11 U.S.C. § 506(a). Accordingly, the Court finds that the Debtors may modify the rights of CitiMortgage pursuant to the provisions of 11 U.S.C. § 1322(b)(2). The Court will issue an order granting the Motion seeking to void CitiMortgage's second mortgage lien on the Property. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.

Date:  February 10, 2017          /s/ J. Michael Deasy
                                  J. Michael Deasy
                                  Bankruptcy Judge